## GEORGE NASSANEY v. R. B. CULLER, TRADING AS NATIONAL UPHOLSTERY COMPANY.

(Filed 24 May, 1944.)

**1. Pleadings §§ 15, 22—**

In a suit to rescind a contract and for a return of the purchase price paid, where the complaint alleges that defendant sold plaintiff a truck and trailer for a down payment, balance in monthly installments from payments to plaintiff for hauling freight for defendant, who agreed to furnish sufficient freight for that purpose, and after a substantial sum had been paid on the balance of the purchase price from such freight, the defendant took possession of the truck and trailer, arbitrarily refused to give plaintiff any more freight, demanded the balance of the purchase money, and attempted to sell the truck and trailer privately, a cause of action is stated and the allowance on the trial of an amendment to the complaint, alleging a public sale of the property by defendant to himself, and also conversion, and the court's refusal to grant defendant a continuance on that account are not prejudicial errors.

**2. Pleadings §§ 21, 22—**

The court in its discretion may allow an amendment to pleadings setting up new matter, even where the transaction occurred after the action was brought, provided it does not assume the role of a new and entirely different claim. G. S., 1-163.

**3. Same: Limitation of Actions § 15—**

A new cause of action may be introduced by way of amendment to the original pleadings; but if the amendment introduces new matter, or a cause of action different from the one first propounded, and with respect to which the statute of limitations would then operate as a bar, such defense or plea will have the same force and effect as if the amendment were a new and independent suit.

**4. Pleadings § 22—**

Ordinarily, when an amendment is made containing substantially new and material allegations, the opposing party must be given an opportunity to meet the new allegations and a continuance for such purpose has been regarded as a matter of right; but not so where the facts set up are well known to the other party and a continuance would not put him in a position to dispute them.

APPEAL by defendant from *Gwyn, J.,* at 1 November, 1943, Civil Term of the High Point Division of the Superior Court of GUILFORD.

The plaintiff brought this action on 4 November, 1942, and filed his complaint alleging that he had purchased from the defendant a 1941 Model Ford Tractor and a Black Diamond Trailer for the sum of $3,300, and at that time made a down payment in the sum of $728. The balance of the purchase price was to be paid in monthly installments from moneys paid to the plaintiff by the defendant for freight hauled by the

plaintiff for the defendant with the said tractor and trailer. The defendant, it is alleged, agreed to furnish the plaintiff sufficient freight to enable him to meet the monthly payments. The truck was delivered to the plaintiff, but as a matter of convenience, the title was not then transferred. Subsequently, the plaintiff leased to the defendant the tractor and trailer for a period of twelve months, or so long as the equipment was in such condition as to be safely used in hauling.

Immediately thereafter the plaintiff began to haul freight for the defendant, and continued to haul the same and make payments on the tractor and trailer until some time in December, 1941. At that time there was an approximate balance due on the tractor and trailer of $1,300.

Some time in December the defendant, declaring that his business was slow, discontinued giving the plaintiff freight to haul and directed the plaintiff to park the truck on defendant's premises. . The defendant continued to make shipments to points covered in the lease, not through the plaintiff or by the leased truck and trailer, but by rail and other trucks, and refused to furnish the plaintiff with freight to haul; and thereupon demanded payment of the balance of the purchase price of the truck and trailer, and refused to permit the plaintiff to remove the same from the premises of the defendant and refused to transfer title until payment was made. Plaintiff alleges that he stayed in High Point about two months thereafter to perform his part of the agreement, and has always been ready and willing to do so; but defendant continued to refuse to give him any more freight to haul, and continued to demand payment for the balance due on the purchase price, which plaintiff was unable to make because of defendant's breach of his contract. Plaintiff alleges that the equipment was in excellent condition at all times and that defendant's refusal to furnish him with freight to haul was arbitrary and without cause.

The plaintiff further alleged that the defendant had sold the equipment described at private sale, without consent of plaintiff and without his knowledge.

Alleging that the breach of the contract was such as to abrogate the same at plaintiff's election, the plaintiff expressed his election to consider the contract rescinded, and demanded a return of the purchase price.

Some time thereafter, the defendant filed an answer, denying certain material allegations of the complaint and averring that the plaintiff had become in arrears with his payments on a promissory note secured by chattel mortgage on the tractor and trailer given to the defendant, and was also in arrears with payments to the Universal Credit Company

on the balance due it by the defendant, which the plaintiff had assumed, and that the plaintiff had failed to keep the tractor and trailer in good condition, with the result that it was not in condition for the hauling of defendant's freight. Defendant admitted that he had attempted to sell the equipment at private sale and had entered into an agreement for the sale of the same, but that the purchaser had returned the tractor without paying for it; and that defendant later offered the tractor and trailer for sale at public auction, after due advertisement as provided by law. The defendant in a further and affirmative defense alleged, *inter alia,* that on 21 December, 1942, he had sold the tractor under the chattel mortgage made to him, after due advertisement, "to the last and highest bidder for the sum of $1,000.00." (See paragraph 9, R., p. 9.)

When the cause came on for trial, the plaintiff asked leave to amend his complaint by alleging, amongst other things, that the defendant had become purchaser at the sale under the chattel mortgage made to him— which sale was set up by defendant as a further defense—and had converted the property—that is, the tractor and trailer—of the plaintiff to his own use, and demanded damages therefor. There were other allegations as to the value of the property at the time of the alleged conversion and the indebtedness thereupon. The amendment was allowed over the objection of the defendant, and defendant excepted. Thereupon, the defendant moved for a continuance of the cause upon the ground that the amendment had entirely changed the nature of the case, and that he was taken by surprise and had had no opportunity of preparing an adequate defense to the amendment. The motion for continuance was overruled, and defendant excepted.

The defendant then demurred, *ore tenus,* to the complaint and amendment as not constituting a cause of action. After argument upon this motion, it was overruled and defendant excepted.

The cause then proceeded to trial.

With reference to what took place at the mortgage sale and the final disposition of the equipment, the defendant, testifying in his own behalf, stated that the tractor and trailer were bid off by Mr. Fleet Lewis, and further said: "I asked him to be at the sale and if it did not bring as much as was owing on the debt I wanted it back because I wanted to get out of it what I had in it. I took it back over. I sold the tractor. I have not sold the trailer."

Testifying for the defendant, Fleet Lewis said: "At this sale I had the understanding or arrangement with Mr. Culler that I would go over and bid for him up to the amount of the indebtedness. When I bid I was bidding for him. I bid $1,000. I turned it over to Mr. Culler. I did not get the title in my name. I don't know the procedure. I had nothing

to do with getting a title—I just bought it off for him and let him look after the title part."

Issues were submitted to the jury, which were found in favor of the plaintiff; and judgment was rendered for the plaintiff in the sum of $592.50, together with costs.

Upon the submission of the issues referred to, the amount of the indebtedness upon the car had been agreed upon as $1,407.50. The reasonable market value of the car was answered by the jury as $2,000, and the amount of recovery, as determined by the jury, was $592.50.

From this judgment the defendant appealed, assigning errors.

*James B. Lovelace for plaintiff, appellee.*

*Walter E. Crissman and C. A. York for defendant, appellant.*

SEAWELL, J. There are three questions posed by the appeal: 1. Was the court justified, in law, in permitting plaintiff to amend his pleading? 2. Did the amendment to the pleading, as a matter of law, confer upon the defendant an unconditional right to continuance? 3. Did plaintiff's pleading in its final form state a cause of action?

The question whether the complaint states a cause of action must be answered in the affirmative. As originally filed, we think the allegations of fact, if supported by the evidence, would have justified a recovery of damages for a breach of contract, or a rescission of the contract, at the election of the plaintiff. The amendment does not detract from the legal effect of these allegations, but superadds to them the circumstance that the defendant bought plaintiff's tractor and trailer at his own mortgage sale. At this point we are concerned only with the inquiry whether the complaint, as amended, states a cause of action, of whatever kind, and we find that it does. *Meyer v. Fenner,* 196 N. C., 476, 146 S. E., 82.

The amendment allowed the plaintiff does not seem to be challenged because the transaction to which it relates occurred after the action was brought. That circumstance would not, *ipso facto,* preclude the plaintiff from pleading it by leave of court in a proper case as a matter occurring *puis darrein continuance* and important to be considered in disposing of the controversy—provided it does not assume the role of a new and wholly different claim. In such a situation—that is, where the matter is wholly distinct and did not stem out of the transaction set out in the original complaint and is not sufficiently correlated thereto—the real objection would be noncompliance with G. S., 1-123. See annotation II under this section. Also *Reynolds v. R. R., infra.* In many jurisdictions, where an amendment setting up matter occurring after the institution of the suit is allowed, it must be by supplemental plead-

ing. 41 Am. Jur., Pleading, sec. 302. That technicality does not prevail here. When a substantially new situation supervenes affecting the rights of the parties within the reasonable scope of the dispute, both justice to the litigants and the convenience of the court in ending the controversy is often served by bringing the matter within the pending investigation. *Walston v. Bryan,* 64 N. C., 764, 765.

Our statute, G. S., 1-163, provides that the court may "before and after judgment in furtherance of justice . . . amend any pleading . . . by inserting other allegations material to the case; or, when the amendment does not change substantially the claim or defense, by conforming the proceeding to the fact proved." Construing this section of the law (C. S., sec. 547), McIntosh, in North Carolina Practice and Procedure, sec. 487, has this to say: "The statute permits an amendment in the discretion of the court—'when the amendment does not change substantially the claim or defense.' This is found in connection with the amendment to make the pleading conform to the proof, but it has been applied generally to all amendments made under order of court." See Note. A more discriminating view of the statute, contrary to the contention of the defendant, is taken in *Capps v. R. R.,* 183 N. C., 181, loc. cit. 187, where *Mr. Justice Stacy,* speaking for the Court, says:

"It is the general rule, and consistently held with us, that a new cause of action may be introduced by way of amendment to the original pleadings; but the established limitation on the operation of its relation to the commencement of the suit is that if the amendment introduce a new matter, or a cause of action different from the one first propounded, and with respect to which the statute of limitations would then operate as a bar, such defense or plea will have the same force and effect as if the amendment were a new and independent suit." Citing *King v. R. R.,* 176 N. C., 301; *Belch v. R. R.,* 176 N. C., 22; *McLaughlin v. R. R.,* 174 N. C., 182; *R. R. v. Dill,* 171 N. C., 176; *Fleming v. R. R.,* 160 N. C., 196; and *Union Pac. Ry. Co. v. Wyler,* 158 U. S., 285, 39 L. Ed., 983. See also *Sams v. Price,* 119 N. C., 572, 574, 575, and cases cited.

However, under the facts of this case we do not regard the amendment as introducing such an entirely new and distinct cause of action as to have put it beyond the discretionary power of the court to permit it. The fact that, if standing alone, it might form the basis of a separate suit, if indeed it had that completeness, is not determinative. Many suits are properly based on a series of related transactions, any one of which might constitute a separate cause of action. Also, several causes of action may arise out of the same transaction and different legal consequences may ensue, according to the theory on which the case is tried. But in applying the test, we must regard the factual situation and the manner in which it develops rather than technical labels. "Technical

NASSANEY *v.* CULLER.

considerations or ancient formulae are not controlling." *Klopstock v. Superior Court,* 17 Cal. (2d), 13, 108 P. (2d), 906, 135 A. L. R., 318.

It is not necessary here to be reminded of the numerous cases in our reports which stress the new liberalism introduced by our code pleading. See G. S., 1-163, *supra,* and annotations. Pertinent to the point under discussion and typical of that liberality, in *Reynolds v. R. R.,* 136 N. C., 345, 48 S. E., 765, *q.v.,* the Court permitted a change in the form of action from contract to tort; and in *Oates, etc., Co. v. Kendall,* 67 N. C., 241, 243, from trover and conversion to *assumpsit.* See *Sams v. Price, supra,* 119 N. C., 572, 574, 26 S. E., 170.

Moreover, the defendant seems to have waived the objection to the amendment which he now makes, since the matter sought to be set up therein was first introduced to the controversy by defendant's own pleading, in which, as a further defense, he set up the public sale under the mortgage, basing on that transaction a demand for a deficiency judgment against the plaintiff.

Ordinarily, when an amendment is made containing substantially new and material allegations, the opposing party must be given an opportunity to "meet the new allegations and prepare for trial," and a continuance for such purpose has been regarded a matter of right. McIntosh, N. C. Practice and Procedure, sec. 486, and cases cited and notes. *Sams v. Price, supra.* But the principle expressed in the maxim *cessante ratione legis, cessat et ipsa lex* should, *a fortiori,* apply to a rule of procedure which is the product of the court. The facts set up in the amendment were well known to defendant, and an indefinite continuance would not have put him in a position to dispute them. He also had the parties concerned in the transaction present in court. On the trial he readily testified that he procured an agent to bid in the property for him, and subsequently disposed of the major part of it, the tractor, and regarded the trailer as junk. He then put this agent up as his own witness, who testified that he bought the property for defendant at his request, and turned it over to him. If there was any error in refusing a continuance, it was, therefore, not prejudicial.

We find upon the record no sufficient reason for interfering with the result of the trial.

No error.